## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**Miguel FIGUEROA,**<br>     **Defendant.** | Crim. No. 15-98 (KM)<br><br><br>**MEMORANDUM OPINION** |

This one-count Indictment charges that the defendant, Miguel Figueroa, having previously been convicted of a felony offense in the Superior Court of New Jersey, Essex County, illegally possessed a firearm and ammunition. *See* 18 U.S.C. § 922(g)(1). Trial is currently scheduled to begin on December 14, 2015. Now before the Court are pretrial motions of the defendant challenging the constitutionality of his arrest and the ensuing post-arrest statement, seeking disclosure of 404(b) material, and seeking leave to file further motions as required. Also before the Court are the government's motion *in limine* to use two of the defendant's prior convictions to impeach him if he should testify. The motions are for the most part disposed of by the accompanying order. I write separately to address the motions to suppress evidence.

On November 30, 2015, the Court heard oral argument and conducted an evidentiary hearing on the motions to suppress. As witnesses, the government called two of the arresting officers, Detectives Tauron Hinnant and Tremayne Phillips. The defense called the defendant himself, Mr. Figueroa, to testify. Introduced in evidence were two photographs of a house at 147 Ridge Street in Newark, as well as a photograph of the gun seized from the defendant.

I find the facts as follows.

## A.  Factual Findings

On the night of September 11, 2014, at about 9 p.m., a convoy of three police cars was on patrol on Ridge Street. The first, unmarked car contained Officers Conzentino and Gialanella. The second, marked car contained Detectives Hinnant and Phillips. The third car, also marked, contained Officer Gaulette. The officers were not in uniform, but they were wearing police vests, clearly marked as such, and they wore badges. Hinnant and Phillips know Ridge Street to be in a high crime area, and are aware of multiple arrests that have been made there.

Driving north, the first car stopped near #147 Ridge Street, a residence. Officers Conzentino and Gialanella got out to confront a bicyclist who had been traveling in the wrong direction, without lights or a helmet. The second and third cars stopped behind the first.

From the driver's seat of the second car, Detective Hinnant spotted the defendant, Mr. Figueroa, on the front porch of 147 Ridge Street. He estimates that Figueroa was about two car lengths away from him. It was night, but the street was well lighted. Figueroa was seated on the steps, close to the ground, not on top of the porch.

Hinnant saw Figueroa in the process of standing up, while taking a gun from his lap and placing it in his left pants pocket. Phillips, who was sitting on the passenger side of the car, corroborated that account, although Phillips stated that Figueroa put the gun in his pocket while seated.

Mr. Figueroa got up and began walking south on Ridge Street. Hinnant and Phillips got out of their car. Hinnant yelled "Stop, police," or words to that effect. Figueroa began to run. Hinnant shouted a code indicating that the officers should give chase.

Mr. Figueroa zig-zagged down the street as he ran. Hinnant, following him, could see the handle of the gun protruding from Figueroa's left pants pocket.

Detective Hinnant, who was the first to catch up with Mr. Figueroa, grabbed his shirt. Figueroa struggled, despite being told to stop resisting.

2

Phillips assisted Hinnant in tackling Figueroa and holding him down. Figueroa continued to struggle and, in the estimation of the officers, was attempting to reach for his gun. Gaulette drew his weapon and held it on Figueroa. Gialanella assisted Phillips in handcuffing Figueroa.

Detective Hinnant then took the gun from Mr. Figueroa's pocket. He gave it to Gialanella, who secured it and made it safe.

Mr. Figueroa made some spontaneous statements to the police. It was not until sometime afterwards, however, that he was interviewed. At that time he gave a statement after receiving proper warnings and waiving his *Miranda* rights.

### B.  Discussion of Credibility Findings

In general, I accepted the detectives' account of the events of the night in question, September 11, 2014. Both officers had years of experience, both as to police work in general and as to patrolling the streets of Newark in particular. Both were familiar with, and trained in the use of, firearms. I was favorably impressed by the consistency and cogency of their accounts of the events. I found their demeanor convincing. In my estimation, the officers were careful not to exaggerate or fill in details that they did not truly remember (such as the presence or absence of parked cars). Of course they had a professional interest in vindicating their police work. They had no interest or bias, however, with respect to the defendant, with whom they had previously been unfamiliar.

Cross examination of the officers focused to some degree on their opportunity to observe. Neither officer could state for certain whether there were a lot of cars parked on Ridge Street. Both acknowledged that Mr. Figueroa sat low to the ground. (He is also approximately 5'4" tall.) Neither officer testified, however, that his view was obstructed in any way; Phillips, in particular responded to a direct question by stating affirmatively that his view was not obstructed. Hinnant was certain that Figueroa sat on the steps to the right of the house, rather than the low stoop to the left; Phillips could not recall. (A photo of the house was introduced in evidence to show the location of the stoop and porch.) I do not find that routine discrepancy suspicious.

I asked the parties to cooperate on producing evidence of the physical dimensions of the gun. I have received a photograph of the gun next to a ruler. It appears to be approximately 9" long in the direction of the barrel, and 5 ½" tall. While not conclusive, of course, this evidence is consistent with the officers' statements that they could see the gun in defendant's hand, and see the handle protruding from his pocket.

I found the defendant's testimony unconvincing. He, of course, possesses a keen personal interest in the outcome. Mr. Figueroa has an extensive criminal record, including convictions for narcotics offenses and receipt of stolen property. His account was not always cogent or consistent.

The defendant testified that he never sat on the porch, but was simply walking down the street. He did not deny having the gun, but he did deny that the officers had any basis to stop him. He denied ever having the gun on his lap, or indeed outside his pockets at all.

Mr. Figueroa testified that, despite the presence of multiple officers in police vests, he was unaware that police were chasing him. He says he did not hear the officers tell him to stop. He claimed that he just heard noises and shouting, and ran. He stated that his shirt was grabbed by a "white guy." (Detective Hinnant is African-American, as is Phillips.)

Figueroa admitted he had obtained the gun by stealing it some two hours previously. After his arrest, however, he told officers he had been carrying it for some two months, for "personal protection." Figueroa stated he had been doing "nothing wrong," but admitted that he knew it was illegal for him to possess a gun. Pressed on inconsistencies, he stated that officers had coached him to give the false statements.

Aside from general credibility concerns, I found that Mr. Figueroa's version of the events was simply less consistent or believable.

## C.    Legal Discussion

Defense counsel conceded at oral argument that the case presents no particular legal issues, but rather a factual dispute. Counsel acknowledged

4

that, if the events occurred in accordance with the officers' version, then the seizure of his client and the gun were justified.

The officers' version was that they saw Mr. Figueroa pocket a gun, walk away, and then run away in response to their presence. As he ran, the officers saw the handle of the gun protruding from his pocket. He ignored commands, struggled, and resisted arrest. When, after a physical struggle, the officers subdued him, they took the gun and arrested him.

To begin with, there was no "seizure" until the officers subdued Mr. Figueroa. A Fourth Amendment seizure does not occur until a fleeing defendant is in fact caught: *i.e.,* either subdued by "physical force ... or, where that is absent, submi[ts] to the assertion of authority." *California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct. 1547 (1991). Nothing that occurred before then could have constituted a Fourth Amendment seizure, valid or otherwise.

The forcible detention of Mr. Figueroa—*i.e.,* the initial seizure—was, at least, a valid stop under the reasonable-suspicion standard of *Terry v. Ohio,* 392 U.S. 1 (1968). The officers were in what they knew to be a high crime area. They saw Figueroa secrete what appeared to be a gun. They saw Figueroa flee in response to their presence, and attempt to evade capture. They again saw the handle of the gun protruding from his pocket. All of that amply justified a forcible stop. And the stop immediately produced the gun itself, ripening into probable cause for an arrest.

A *Terry* stop requires reasonable suspicion of criminal activity, not probable cause, let alone certainty. *Id.; Knowles v. Iowa,* 525 U.S. 113, 117-18 (1998). While no case could be wholly on point, similar cases support my conclusion. Indeed, *Terry* stop has been permitted based on the above factors, *without* the sight of the gun. *See, e.g., United States v. Brown,* 448 F.3d 239, 251 (3d Cir. 2006) (reasonable suspicion established by defendants' presence in high crime area, behavior consistent with criminal activity as judged from perspective of experienced officer, and evasive behavior or flight from police); *United States v. Blackman,* 407 F. App'x 591, 595 (3d Cir. 2011) ("Based on

5

Blackman's presence in a high crime area, his location in front of a residence known to the police to be the site of frequent drug dealing activity, and his flight upon seeing police, the officers had reasonable suspicion to conduct an investigatory stop.").

The defendant cites *United States v. Navedo*, 694 F.3d 463, 469 (3d Cir. 2012), but the case does not help him. There, officers saw defendant Navedo standing with a second man, Pozo, who secreted a gun in his bag. Navedo conceded that the officers had at least reasonable suspicion, if not probable cause, as to Pozo. *Id.* at 469 n.7. Mr. Figueroa is in the position of the gun holder, Pozo, not the bystander, Navedo.

In fact, the ensuing discussion in *Navedo* establishes that the officers here possessed, not just reasonable suspicion, but probable cause justifying an arrest of Mr. Figueroa. A warrantless arrest is permissible where the officers possess "probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

*Navedo* emphasized that flight alone does not suffice, and that all of the circumstances must be considered. But this was not mere flight; this was flight from the police, after their actual observation of defendant's concealment of a handgun. *See Navedo*, 694 F.3d at 472 ("It is well established that where police officers reasonably suspect that an individual may be engaged in criminal activity, and the individual deliberately takes flight when the officers attempt to stop and question him, the officers generally no longer have mere reasonable suspicion, but probable cause to arrest.") (citing *United States v. Laville*, 480 F.3d 187 (3d Cir. 2007)).

There being probable cause for arrest, the seizure was valid as well. *See United States v. Robinson*, 414 U.S. 218, 235 (1973).

Likewise, the defendant's voluntary, Mirandized post-arrest statement was valid as well. He challenges the statement only a fruit of the arrest, which I have found to be valid.

## CONCLUSION

For all of the foregoing reasons, the defendant's motion to suppress evidence will be denied.

Dated: November 30, 2015

_____

**KEVIN MCNULTY, U.S.D.J.**